**STATE· of Missouri, Respondent,**

v.

**Joey MOORE, Appellant.**

**No. 42873.**

Missouri Court of Appeals,
Eastern District,
Division Three.

April 21, 1981.

Robert C. Babione, Public Defender, Christelle Adelman Adler, Asst. Public Defender, St. Louis, for appellant.

John Ashcroft, Atty. Gen., Paul Robert Otto, Henry T. Herschel, Asst. Attys. Gen., George Peach, Circuit Atty., St. Louis, for respondent.

REINHARD, Judge.

Defendant appeals following his conviction by a jury for the offense of manslaughter, § 565.005, RSMo 1978.[1]

Defendant was indicted and tried on a charge of capital murder. The trial court submitted instructions to the jury on second degree murder and manslaughter, in addition to capital murder. The jury returned a verdict finding defendant guilty of manslaughter.

Subsequent to the verdict of guilty, the court submitted to the jury MAI–CR 2d Instructions 15.30 and 15.50. Counsel for the state and defendant argued the issue of punishment to the jury, and the jury retired to consider defendant's punishment. After approximately an hour and one-half of deliberation, the jury informed the judge that they were unable to reach a decision as to punishment. The judge returned the jury to the courtroom, discharged them, and sentenced defendant to ten years in the Division of Corrections.

On appeal, defendant contends that:

The court erred in giving MAI–CR 2d 15.50 as it is written because it prohibits counsel from presenting and arguing evidence in extenuation and mitigation of punishment; because it informs the jury at the outset that they can abdicate their duty to assess punishment; and [because] it allows the State's attorney to open and close argument, all in violation of Section 565.006, RSMo.

■ A reading of the Notes on Use applicable to MAI–CR 2d 15.50 clearly indicates that the instruction in this case was given in a situation for which its use was approved; defendant does not argue otherwise. In general, if an applicable criminal instruction is provided by MAI–CR 2d, it is mandatory that the court give the instruction, as written. *State v. Lomack*, 586

---

1. All subsequent statutory references are to RSMo 1978.

S.W.2d 90, 94 (Mo.App.1979). Here, although defendant has attacked the very validity of MAI–CR 2d 15.50,[2] we conclude, for the reasons given below, the court did not err in giving this instruction.

The central tenet of defendant's argument is an alleged inconsistency between MAI–CR 2d 15.50 and § 565.006. Subsection 1 of § 565.006 provides in pertinent part: "At the conclusion of all trials upon an indictment . . . for capital murder heard by a jury . . . the jury shall retire to consider a verdict of guilty or not guilty without any consideration of punishment." Subsection 2 provides in pertinent part:

Where the jury . . . returns a verdict . . . of guilty *as provided in subsection 1* of this section, the court shall resume the trial and conduct a presentence hearing before the jury . . . . In such hearing . . . the jury . . . shall hear additional evidence in extenuation, mitigation, and aggravation of punishment . . . . The jury . . . shall also hear argument . . . regarding the punishment to be imposed. The prosecuting attorney shall open and the defendant shall conclude the argument. (emphasis added.)

The statute refers only to "all trials upon an indictment . . . for capital murder," and does not expressly distinguish those cases in which the defendant is found guilty not of capital murder, but of one of the lesser included homicides. Under the procedure set out in MAI–CR 2d 15.50, however, no additional evidence will be permitted if the defendant is found guilty of manslaughter or second degree murder, and the state will both open and close the argument on punishment.[3]

Defendant argues that MAI–CR 2d 15.50 is improper because the procedures set forth in subsection 2 of the statute apply to "*all* trials upon an indictment . . . for capital murder," regardless for what crime the defendant is eventually convicted. The State, however argues that subsection 2 of the statute refers and applies only to those cases in which the defendant was convicted of capital murder. Thus, there would be an implied exception for those cases in which the defendant is found guilty of first degree murder, second degree murder, or manslaughter.

■ While we agree with defendant that the literal words of § 560.006, read in isolation, do lend support to his argument, we are not, however, persuaded that the statute is unambiguous. It is well settled that the primary goal of statutory interpretation is to ascertain and give effect to the apparent intent of the legislature. *State v. Kraus*, 530 S.W.2d 684, 685 (Mo.banc 1975). To this end, we must consider the statute

---

2. MAI–CR 2d 15.00, paragraph 1 provides:

[T]he [Missouri Supreme] Court has adopted the proposals of the [C]ommittee [on Criminal Pattern Instructions] . . . without judicially deciding or foreclosing any legal, constitutional, procedural, instructional or other issue which may arise in cases tried under Sections 565.001–565.016 (1977), even though the procedures, instructions and Notes on Use adopted by the court are followed and used.

3. MAI–CR 2d 15.50 states:

15.50 Not Guilty of Capital Murder or Murder in the First Degree, but Guilty of Murder in the Second Degree or Manslaughter: Verdict Mechanics

You will fix the punishment by considering only evidence already received, the argument of counsel and the instructions of the Court. You will be provided with forms of verdict for your convenience.

You cannot return any verdict as the verdict of the jury unless all twelve jurors concur in and agree to it, but it should be signed by your foreman alone.

When you have concluded your deliberations, you will complete the applicable form to which you unanimously agree and return it together with all unused forms and the written instructions of the Court.

If, after due deliberation, you are unable to agree upon the punishment, your foreman will sign the verdict form so stating. In such a case the Court will fix the punishment. You will bear in mind, however, that under the law it is your primary duty and responsibility to fix the punishment.

Counsel for both sides may now address you on the issue of the punishment to be imposed. The state's attorney will open. Counsel for defendant may then make his argument. The state's attorney may then reply. After that, no further argument will be permitted and you will retire to consider your verdict.

together with related statutes which may shed light on its meaning, 530 S.W.2d at 686–87; we must also consider the apparent purpose or goal of the statute, and any relevant conditions existing at the 'time it was enacted, *State v. Wright*, 515 S.W.2d 421, 427 (Mo.banc 1974). Here, the statute was enacted as part of House Bill 90, Laws 1977, p. 718, approximately two and one-half months after the Missouri Supreme Court's decision in *State v. Duren*, 547 S.W.2d 476 (Mo.banc 1977). In *Duren*, Missouri's existing capital murder provisions were held unconstitutional in light of *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). *Duren* noted *Gregg's* statement that constitutional concerns regarding a capital punishment law "are best met by a system that provides for a bifurcated proceeding at which the sentencing authority is apprised of the information relevant to the imposition of sentence and provided with standards to guide its use of the information." 428 U.S. at 195, 96 S.Ct. at 2935.

House Bill 90 provided, in capital murder cases, for a bifurcated proceeding, for taking of further evidence relevant to the imposition of sentence following a guilty verdict, and for express mitigating and aggravating circumstances. All these provisions are logical in relation to *Duren* and *Gregg*, and it is apparent that the legislative purpose of the act was to create a constitutionally acceptable capital murder law. There is no indication, however, that the legislature intended at the same time to substantially change the existing law regarding lesser included homicides, which unlike capital murder, were completely unaffected by *Duren* and *Gregg*, and which do not constitutionally require similar provisions.

We also note that defendant's interpretation of the statute is not logically persuasive when the statute is viewed in relation to other portions of Missouri's law regarding homicides. Under defendant's argument, any defendant indicted for capital murder but convicted of first degree murder, second degree murder, or manslaughter would have a second trial, on the issue of punishment. The *only* possible punishment for a defendant convicted of first degree murder, however, is life imprisonment; obviously, a trial on the issue of punishment in such a case would be without point. *See* § 565.008.2, RSMo 1978.[4] Also, under existing law, in all non-capital homicide trials, the issue of punishment is submitted to the jury at the same time as the issue of guilt, without subsequent introduction of evidence relating to mitigation or aggravation. *See, e. g.,* MAI–CR 2d 15.14, 15.18. As noted previously, however, only capital murder constitutionally requires such a bifurcated procedure.

In light of the obvious legislative purpose of § 565.006, the circumstances surrounding its enactment, and the provisions of related homicide law, we conclude that the legislature intended the procedures set forth in § 565.006.2 to apply only in those cases in which the defendant had been convicted of capital murder. We therefore hold that § 565.006.2 was not applicable to the case at hand, and that the trial court committed no error in giving MAI–CR 2d 15.50 as written.

Judgment affirmed.

CRIST, P. J., and SNYDER, J., concur.

---

4.  *See also,* MAI–CR 2d 15.00, Notes on Use, p. 15–12.