STATE of Missouri, Respondent,

v.

Reginald L. NICKENS, Appellant.

No. WD 36361.

Missouri Court of Appeals,
Western District.

Oct. 8, 1985.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied Dec. 3, 1985.

C.J. Larkin, Columbia, for appellant.

William L. Webster, Atty. Gen., Philip M. Koppe, Asst. Atty. Gen., Kansas City, Mo., for respondent.

Before DIXON, P.J., and SOMERVILLE and NUGENT, JJ.

NUGENT, Judge.

Defendant Reginald Nickens appeals his conviction of assault in the first degree. He challenges the sufficiency of the evidence and complains of errors in cross-examination and of the comments made by the prosecutor during cross-examination and closing argument. We affirm.

In assessing the sufficiency of the evidence after a guilty verdict, an appellate court must accept as true all the evidence and reasonable inferences to be drawn from it that support the verdict. *State v.*

*Morgan,* 592 S.W.2d 796, 805 (Mo.1980) (en banc). The evidence that tends to prove the defendant's guilt follows.

On January 31, 1984, as James B. Robinson, the victim of the alleged assault, was painting the inside walls of an apartment, a "heavy set" black man came in and sat down on some paint cans. The two men talked while Robinson continued to work. The heavy set man suggested that he would like to drink a beer. Mr. Robinson offered to buy a six-pack of beer if someone could go get it. The heavy-set man stated that his brother had a car and would go with him to buy the beer. He left the apartment and returned with his brother, the defendant, a "skinnier" and "younger" man. Robinson gave the defendant a twenty dollar bill to buy the beer, and he left the apartment and returned with a six-pack of beer and a half-pint bottle of J.W. Dant whiskey. When the defendant gave Mr. Robinson the change, Robinson asked why he purchased the whiskey with his money. From his seat on the paint cans, the heavy set man assured Mr. Robinson that he would pay him back.

A short time later, Robinson went up the apartment stairs to get a paint brush. As he came down the stairs, his eyes fixed on the heavier man, he was hit in the side of the head with a metal object.

Although at the instant of the attack Robinson did not see his assailant's face, he believed that the "skinnier one" had hit him because only three people were in the apartment when he was struck. He was looking at the heavier man sitting on the paint cans, and the defendant was the only other person in the room. Robinson also caught a glimpse of the attacker's clothing and profile. The attacker's facial features looked like the defendant's. Robinson recognized his clothing as "work" clothing, the same clothing the defendant wore.

The blow knocked Robinson to the floor. He tried to focus and looked toward the paint cans to find the heavier man, but he had disappeared. The heavier man then started kicking Robinson in the head and

neck. Robinson said that he was about to lose his mind as both men continued beating him. Robinson vaguely remembered that a young black woman came in and said she would call the ambulance.

At the end of his direct examination, the prosecutor showed Mr. Robinson a photograph of the defendant's brother, Rodney Nickens, and asked him if he recognized the man in the picture. Mr. Robinson then mistakenly identified the man in the photo as the defendant. He then said that it was one of the two men in the apartment. When the prosecutor asked, "Which one is it?" Robinson replied that it looked like "the heavier set one."

Upon cross-examination, defense counsel established that the photograph was of Rodney Nickens and that Mr. Robinson had at first misidentified it as the defendant. Robinson then admitted that he never saw the attacker's face but said that he saw his shoes and clothing. He had difficulty describing the clothing but did say that the attacker was wearing clothes he described as "work clothes" and "dungarees."

Mr. Robinson's testimony during cross-examination was somewhat confused; however, he repeatedly stated that he "believed" the defendant to be the person who struck him. Defense counsel then asked Robinson if he recalled being interviewed on several occasions by various persons. Robinson had difficulty remembering the interviews. Defense counsel also asked Robinson several times whether he had been shown photographs of either the defendant or his brother. Robinson said that the police had probably shown him some photographs. He later said that he could not remember being shown any photographs by the prosecutor or the police. He could not remember the date when defense counsel came to his home to interview him, but he remembered parts of their conversations. Counsel then pressed Robinson about the subjects of those discussions. Robinson remembered little of what was said and told defense counsel that he had been "out of his head" for thirty-five days after the incident.

The defendant recalled Mr. Robinson as a witness. Counsel told Mr. Robinson that he would bring a man in for Robinson to view. He then brought in Mike Nickens, another of defendant's brothers. Counsel repeatedly asked Robinson whether he had seen that man on the night he was beaten. He answered several times that he thought the man was the "heavier set guy" in the apartment, but that he could not be certain.

The state also called Sgt. Phillip Herbert who with another police officer had answered the call to the scene of this assault. Upon arrival at the apartment, he found Mr. Robinson unconscious on the living room floor, covered with blood and paint.

The two policemen then made a detailed inspection of the apartment and its contents. Sgt. Herbert testified that they found an oven lying face down beside Robinson partially covering his face. When the oven was pulled upright, the door fell off. The thirty-pound door was splattered with Robinson's blood and hair. The officers also found Robinson's wallet on the floor, empty. Beer and paint cans were also strewn about the apartment, and the officers discovered one half-pint bottle of J.W. Dant whiskey. A large pool of blood was near the stove and the body, and blood was splattered throughout the apartment with a large smear on the wall.

Sgt. Herbert, who knew both Reginald Nickens and his somewhat smaller brother, Rodney Nickens, saw the defendant the next day in the hospital; he was being treated for a broken right hand.

The state also called Crystal Smith, the defendant's cousin. She had wandered into the apartment the night of the incident and found a man lying on the floor covered with blood. Crystal first stated that she saw the defendant in the apartment with the victim, but later upon cross-examination, she said that no one was in the apartment with the victim. Much of Ms. Smith's testimony was confused and conflicting. She avoided many questions by answering that she did not remember what happened. She stated several times that she was drunk and could not remember what hap-

pened. Near the end of her testimony, Ms. Smith admitted that she saw a man, whose face was bloody, lying on the floor of an apartment on Sycamore Street and that Reginald Nickens was in the apartment with the injured man and that she saw Reginald hit or kick the man.

Finally, the state called Steven Wolfe to testify. He lived next door to the apartment in which Mr. Robinson was found. He stated that on the evening of January 31 he heard voices from the apartment and heard somebody say something about money. He also said that he was acquainted with the defendant and saw his car in front of the apartment before he heard the voices. Later he heard a woman scream and he ran to the apartment. He found Jim Robinson on the floor, but the defendant's car was gone. He then ran home and called an ambulance.

The prosecutor recalled Sgt. Herbert and asked him if he had ever shown a set of photographs to Mr. Robinson. Sgt. Herbert stated that he had on two occasions. Defense counsel objected to the line of questioning as hearsay. The prosecutor argued that Mr. Robinson's credibility had been attacked on the issue of identification, and, therefore, she was entitled to introduce Robinson's prior consistent statements. The trial judge permitted the prosecutor to ask the sergeant why he had selected those particular pictures, but cautioned that she should not inquire about Robinson's responses. The prosecutor then asked about the pictures themselves.

Shortly thereafter, the prosecutor asked Sgt. Herbert whether Mr. Robinson had selected any photographs from the group. Defense counsel objected that such testimony would be hearsay. The prosecutor again argued that such testimony would show Robinson's prior consistent statements. The prosecutor argued, "Your honor, that's admissible to show that he made the prior statements. Now, unfortunately, defense counsel's client has beaten up Mr. Robinson.... And he can't remember that." Defense counsel promptly objected to the prosecutor's statements, arguing

that they were the prosecutor's opinion couched to prejudice and inflame the jury and moved for a mistrial. Defense counsel also moved that "[a]t the very least, ... the jury be advised to disregard that statement." The trial judge cautioned the prosecutor to make no further statements of that type and advised the jury to disregard the statements. The court then overruled defense counsel's hearsay objection.

Sgt. Herbert then testified that he showed a set of pictures to Mr. Robinson while he was in the hospital. As he looked through, Robinson set the picture of the defendant on the bed. He continued through them and selected the photo of Rodney Nickens and said, "This is a bad one", and put it back in the pile. When Mr. Robinson sifted through the pile a second time, he started crying when he came to the photos of Reginald and Rodney Nickens. The officer asked Robinson if those were the men who injured him but received no reply.

He later visited Mr. Robinson at his home and showed him more photographs. The prosecutor asked if Mr. Robinson had selected any pictures from the set. Defense counsel objected that such testimony would be hearsay. The prosecutor argued that the testimony would be admissible as a prior consistent statement. The court overruled the objection, and Sgt. Herbert stated that he asked Robinson if he saw the two men who had assaulted him. Mr. Robinson then pointed to the picture of the defendant and said, "That's the little one." He continued sifting through the photographs and pointed to the picture of Rodney Nickens and said, "That's the big one."

At the close of the state's evidence, defense counsel reopened the issue of the officer's testimony regarding Mr. Robinson's prior statements. The trial judge invited defense counsel to look up the law in this area and suggested that she would entertain a motion to strike this testimony. Later, the judge, the prosecutor and defense counsel discussed the admissibility of the officer's testimony. Defense counsel argued that Mr. Robinson testified that he

had not been shown any photographs and, therefore, had not been impeached regarding any photo identifications. Defense counsel stated, "I think that the jury should be advised to disregard all of that testimony. I think the testimony should be stricken. Otherwise, frankly, I think I have got grounds for reversal, in the event of conviction." The trial judge ruled that the court properly allowed Sgt. Herbert to testify that he had shown photographs to Mr. Robinson, but incorrectly permitted him to reveal which photographs Robinson chose. The court then instructed the jury as follows:

> Ladies and gentlemen, I wanted to inform you of a certain matter. You will recall that Sergeant Herbert testified on two occasions. In the last one, the most recent one, there was certain testimony that he gave of Mr. Robinson, who is another witness in this case, as to identification of certain photographs that he made out of the court room, not that were made in the court room, but out-of-the-court room identifications. The court wishes to advise you that this is hearsay evidence. It is not admissible. It is ordered stricken from the record, and you are directed not to consider that testimony relating to any out-of-court identification by James B. Robinson.

The defense called Mike Nickens, defendant's brother, to testify. He stated that on the evening of January 31, 1984, he went to his sister's house about seven o'clock. He saw the defendant there and asked to borrow his car. He used the defendant's car until eleven o'clock, then he returned it to his sister's house and handed his sister the keys. Regina Glover, the defendant's girlfriend, testified that the defendant was at her house until six-thirty that evening. At that time, she and the defendant went to the defendant's sister's house to play cards. They stayed until about ten-thirty. Defendant's sister, Fredetta Richmond, testified that the defendant was at her house playing cards from six-thirty until eleven o'clock and that her brother, Mike Nickens, came by about seven-thirty to borrow the defendant's car.

In rebuttal, the state called officer David Leps who testified that he went to the home of Regina Glover, the defendant's girlfriend, on February 1, to ask about defendant's whereabouts the night before. She said that she had struck the defendant with a vase that day, and that he left her apartment and did not return until six p.m. They then rode around in his car until seven-thirty p.m. when he left the apartment. He did not return until ten p.m.

At about eight a.m. on February 1, Officer Leps investigated an accident in which defendant's car struck a truck. The car incurred only minor damage on the passenger's side. Nevertheless, the defendant displayed a badly swollen right hand and several cuts and bruises, including an injury just above the eye. Officer Leps persuaded the defendant to seek medical attention at the hospital.

In closing argument, defense counsel objected to portions of the prosecutor's comments. The prosecutor argued that the defendant's evidence was manufactured and that all of the defendant's witnesses were lying. She explained that all of his witnesses were relatives or very close friends who would do whatever they could to help the defendant. She repeated that somebody had lied on the witness stand and that the defendant's witnesses had lied to protect their loved one. Specifically, the prosecutor noted that Regina Glover had given two conflicting stories, one to Officer Leps and the other on the stand. She argued that if Regina Glover was lying, both Fredetta Richmond and Mike Nickens were lying. The prosecutor then discussed the car accident, noting that the accident occurred the day after Mr. Robinson's assault. Defendant's car suffered only minor damage, yet his arm was broken. She argued that the defendant had staged the accident and that he broke his arm, not in the car, but by brutally beating Mr. Robinson.

## I.

Defendant first complains that the trial court erred in overruling his objections and

denying his motion for mistrial when the prosecutor during closing argument stated that the defendant's alibi witnesses were lying.

We doubt that defendant has properly preserved this point for appeal, but we need not resolve that question because we hold that the trial court did not err in overruling defendant's objections to the prosecutor's argument.

■ On appeal the defendant argues that the comments had the effect of shifting the burden of proof to the defendant to prove the veracity of his alibi testimony. We do not agree. The defendant cites no case law that even mentions that such comments or similar comments by a prosecutor have the effect of shifting the burden of proof to the defendant. Most of the cases cited by the defendant deal with whether certain jury *instructions* shift the burden of proof. They are clearly inapplicable here. *Sandstrom v. Montana*, 442 U.S. 510, 525–27, 99 S.Ct. 2450, 2459–61, 61 L.Ed.2d 39 (1979); *State v. Commenos*, 461 S.W.2d 9, 13 (Mo.1970) (en banc); *State v. Wilfong*, 438 S.W.2d 265, 266 (Mo.1969); *State v. Smith*, 358 Mo. 1, 212 S.W.2d 787, 789 (1948); *State v. Hubbard*, 351 Mo. 143, 171 S.W.2d 701, 706–10 (1943).

Defendant also asserts that *State v. Carter*, 557 S.W.2d 47, 50 (Mo.App.1977), establishes that the prosecutor may not disparage the testimony of an alibi witness. *Carter* is not in point. It deals with a prosecutor's comments during voir dire of the jury anticipating defendant's probable use of an "alibi witness." The court characterized that comment as a non-disparaging use of the words "alibi witness."

■ Whether a given argument is so prejudicial under the facts in the case is largely within the discretion of the trial judge, and the appellate court will not interfere unless the record shows that the trial court prejudicially abused its discretion. *State v. Hutchinson*, 458 S.W.2d 553, 556 (Mo.1970) (en banc). The courts frown on prosecutors' expressions of personal opinion and upon mere personal abuse. Nevertheless, during the closing argument a prosecutor may state an opinion or conclusion that he fairly draws from the evidence. *State v. Jackson*, 499 S.W.2d 467, 471 (Mo.1973). He is permitted to comment on the credibility of defense witnesses, including the truth or falsity of their testimony. *State v. Ferguson*, 651 S.W.2d 521, 524 (Mo.App.1983). He may even belittle a witness and point to the improbability of his testimony so long as such an inference may fairly be drawn from an appraisal of the evidence. *State v. Johnson*, 496 S.W.2d 852, 859 (Mo.1973).

The *Ferguson* case is very similar to the case at bar. There, during closing argument, the prosecutor stated that the defendant's wife was lying while on the witness stand. The court noted that the woman's testimony directly conflicted with a police officer's testimony regarding the defendant's whereabouts at the time of the offense. The court held that the prosecutor's comments were a permissible inference that could be drawn from the evidence and upheld the trial court's ruling in favor of the state. *Ferguson* at 524.

■ Here, the prosecutor's statements that the defense witnesses had lied were fairly drawn from the evidence. Her argument must be examined with reference to the case as a whole. Michael Nickens, Regina Glover, and Fredetta Richmond testified that on the night of January 31, 1984, the defendant was at his sister Fredetta's house playing cards from six-thirty until eleven o'clock. Much evidence presented at trial supports the inference that they were lying. The testimony of the victim, James Robinson, and the defendant's cousin, Crystal Smith, directly clashed with their testimony because both of them saw the defendant in the Sycamore apartment that evening. As the prosecutor pointed out during argument, Mr. Robinson had no apparent motive to lie. The alibi witnesses, however, were all either related to or a close friend of the defendant, suggesting that they might do whatever possible to protect him. Other evidence of statements made by Regina Glover also directly con-

tradicted her testimony. Officer Leps testified that on the day after the incident, Regina Glover told him that on January 31 the defendant left their house at about seven-thirty in the evening and did not return until ten o'clock. The prosecutor argued to the jury that such testimony showed that Regina Glover was lying.

Enough evidence was presented to justify the prosecutor's drawing the inference that the defendant's alibi witnesses were lying, especially in light of the fact that during closing argument, the trial judge instructed the jury to "remember the evidence as you recall it and know that argument [itself] is not evidence in this case."

## II.

### (a)

In his second point, the defendant claims that Sgt. Herbert's testimony regarding the victim's photo identification of defendant and his brother was inadmissible hearsay and that the admission of such testimony required the granting of a mistrial. We agree that the officer's testimony in which he identified the photographs the victim chose and his comments accompanying the selection was inadmissible. The trial judge took great pains, however, to grant the defendant all the relief he requested to correct the error; therefore, he cannot now complain that the court did not do more.

In *State v. Degraffenreid,* 477 S.W.2d 57, 64 (Mo.1972) (en banc), the Supreme Court held that testimony of a third person stating that a witness had identified the defendant out-of-court is hearsay and inadmissible unless an exception to the hearsay rule applies. The court explained that no substantial difference exists between the third person attesting that the identifying witness told him that the defendant did it and the third person attesting that the identifying witness pointed to the defendant's photograph. *Id.* at 62–63. The court noted, however, that the identifying witness himself may describe his extrajudicial identification of the defendant whether it be by photographs or by selecting the de-

fendant from a lineup. *Id.* at 62. But testimony of third persons corroborating the out-of-court identification is not admissible unless the identifying witness has been confronted with statements contradicting his testimony regarding the out-of-court identification. *Id. See also State v. Grady,* 630 S.W.2d 89, 90 (Mo.App.1982).

Here, Mr. Robinson first made an in-court identification of the defendant as his attacker. Later, he mistakenly identified a photograph of the defendant's brother as the defendant, although immediately thereafter he correctly stated that it was a picture of "the heavy set man." During cross-examination, defense counsel asked the victim if he had ever been shown photographs of the defendant. Robinson stated that he probably had, but later he could not remember any such occasion. During his testimony, Robinson never described his extrajudicial identifications of the defendant. Thus, he could not have been impeached regarding the details of those out-of-court identifications. Such impeachment was a prerequisite to the introduction of Sgt. Herbert's testimony that Mr. Robinson had, indeed, selected the defendant's likeness from an array of photographs.

The state argues that defense counsel "opened the door" to the officer's testimony by asking the victim if he had ever been shown any photographs of the defendant prior to trial. We do not agree. Since the victim answered that he did not recall having been shown any photographs, the prosecutor could properly show that Mr. Robinson had, indeed, been shown photographs of the defendant and others before trial. Such cross-examination, however, did not "open the door" wide enough to permit Sgt. Herbert to testify on direct examination about which photograph Mr. Robinson selected. Under the circumstances, only Mr. Robinson could testify about which pictures he had chosen. *Degraffenreid* at 62–64.

Even though portions of the officer's testimony were inadmissible, the defendant did not move a mistrial. The defendant's

failure to request a mistrial of the trial judge forecloses his obtaining one here.

■ A declaration of mistrial is an extraordinary remedy that should be used only when the court believes that prejudice to the defendant can be removed in no other way. In the first instance, the trial judge is the appropriate person to determine whether a mistrial is the necessary remedy. The judge observed the incident which spurred the request and is in a much better position than an appellate court to determine what prejudicial effect the error had. *State v. Davis,* 653 S.W.2d 167, 176 (Mo.1983) (en banc). Here, the defendant never asked the trial judge to make that determination, and we will not do so for the first time on appeal. The defendant argued at trial that the jury should be advised to disregard the testimony and that it should be stricken from the record. Since the trial judge granted his full request, defendant cannot now complain that she did not do more. *State v. Johnson,* 663 S.W.2d 265, 266 (Mo.App.1983). The record convinces us to agree with defense counsel's on-the-spot assessment that the damage could be controlled by directing the jury to disregard and striking Sgt. Herbert's testimony about the victim's selection of defendant's picture. Mr. Robinson had already identified defendant Reginald Nickens in court and had again and again stated that he believed that defendant was the man who struck him.

### (b)

Defendant also complains of the prosecutor's comment that the defendant had "beaten up" Mr. Robinson and argues that, although the trial court sustained his objection, the trial court erred in overruling his motion for a mistrial. During Sgt. Herbert's testimony, defense counsel objected on hearsay grounds to questions regarding Mr. Robinson's pretrial identification of the defendant. A discussion between counsel ensued during which the prosecutor stated, "Now, unfortunately, Defense Counsel's client has beaten up Mr. Robinson.... And he can't remember that." Defense

counsel objected and argued that this was the personal opinion of counsel. He then stated, "I am going to ask for a mistrial. At the very least, that the jury be advised to disregard that statement." The court immediately instructed the jury to disregard the prosecutor's statement and admonished her to make no further statements of that sort.

■ Declaration of a mistrial is a drastic remedy, and rests largely within the discretion of the trial court. *State v. Davis* at 176. Here, evidence had already been presented which implicated the defendant as the assailant. The trial judge sustained defendant's objection that the prosecutor's remark was only her opinion and instructed the jury to disregard it. We cannot say that the trial court abused its discretion in failing to declare a mistrial.

In any event, counsel did not insist that the judge determine whether a mistrial was appropriate. By defense counsel's statement that "[a]t the very least" the court should instruct the jury to disregard the comment, defense counsel indicated that he was willing to accept this remedy in lieu of a declaration of mistrial.

### III.

Finally, the defendant claims that the trial court erred in accepting the jury's verdict and overruling his motion for acquittal. Defendant asserts that the state's evidence was insufficient to establish guilt because the victim's identification of defendant was self-contradictory. He also contends that Crystal Smith's statement against defendant was vague and self-contradictory, and no other evidence linked defendant to the crime. We disagree.

When the sufficiency of the evidence is questioned, we must accept as true all evidence and inferences which support the jury's verdict and disregard all evidence and inferences to the contrary. *State v. Brown,* 660 S.W.2d 694, 699 (Mo.1983) (en banc); *State v. Bolder,* 635 S.W.2d 673, 679 (Mo.1982) (en banc). Thus, our role is not to weigh the evidence to determine whether

we believe that it established guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979); *Brown, supra*, at 698. Rather, our role is limited to determining whether the evidence, viewed in the light most favorable to the prosecution, is sufficient to enable any rational trier of fact to find the defendant guilty beyond a reasonable doubt. *Jackson, supra*, 443 U.S. at 319, 99 S.Ct. at 2789; *Brown, supra*, at 699.

■ Although portions of Mr. Robinson's testimony were contradictory, the jury was entitled to accept part of his testimony and reject other parts. The credibility of a witness is particularly within the province of the jury. A jury may believe all, some or none of his testimony in light of the facts, circumstances and other testimony in the case. *State v. Holt*, 592 S.W.2d 759, 774 (Mo.1980) (en banc). Thus, here the jury was entitled to accept Mr. Robinson's in-court identification of the defendant as his attacker. He gave at least two reasons he believed the defendant attacked him. First, the defendant was the only person in the room who could possibly have hit him from behind. Second, he saw his assailant's clothing and shoes and said that they were the defendant's.

Moreover, other evidence corroborated Mr. Robinson's testimony. For example, he testified that the defendant bought a six-pack of beer and a half-pint bottle of J.W. Dant whiskey and brought them back to the apartment. Sgt. Herbert found several empty beer cans and a half-pint bottle of J.W. Dant in the apartment. Mr. Robinson also stated that he asked the defendant why he purchased that whiskey with his money. Steven Wolfe, the next-door neighbor stated that he recognized defendant's car in front of the apartment and later heard some talk about money coming from the apartment. An oven door splattered with blood and hair was found near Robinson's body, corroborating Robinson's testimony that he was struck with a metal object. The splatterings of blood throughout the apartment and blood smears on the wall support his testimony that he was brutally beaten after he was struck with the metal object.

Crystal Smith's testimony also supports the jury verdict. She testified that she and some friends wandered into an apartment on Sycamore where they found a man covered with blood. She saw the defendant in the apartment near the injured man and saw him in her presence hit or kick the man lying on the floor. The jury was entitled to believe that testimony and to reject all of her testimony to the contrary.

■ The defendant further argues that, since this crime was proved by circumstantial evidence, the "circumstantial evidence rule" must be applied to this case. He urges that the circumstances must be consistent with the hypothesis of guilt and inconsistent with innocence and must exclude every reasonable hypothesis that would establish the accused's innocence, *citing State v. Siraguso*, 610 S.W.2d 338, 341 (Mo.App.1980). He misconstrues both the rule and the evidence in this case. The "circumstantial evidence rule" governs only those cases founded *entirely* upon circumstantial evidence. *State v. Biddle*, 599 S.W.2d 182, 192 (Mo.1980) (en banc). Here the state's case is supported by both direct and circumstantial evidence. Mr. Robinson's testimony describing and identifying his assailant was derived from his first-hand knowledge as the victim and was, therefore, direct evidence of defendant's guilt. Crystal Smith's testimony that she found an injured man and the defendant standing near him and her testimony that she saw him hit or kick the man lying on the floor was, likewise, direct evidence. Thus, the circumstantial evidence rule is not applicable here.

When all the evidence is viewed in the light most favorable to the state, we are convinced that a rational trier of fact could find the defendant guilty beyond a reasonable doubt.

For the foregoing reasons, we affirm the judgment.

All concur.