**STATE of Missouri,
Plaintiff–Respondent,**

v.

**Loretta GREER, Defendant–Appellant.**

**No. 53685.**

Missouri Court of Appeals,
Eastern District,
Division Five.

Aug. 2, 1988.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Sept. 7, 1988.

Application to Transfer Denied
Oct. 18, 1988.

James S. McKay, St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., William J. Swift, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

PUDLOWSKI, Chief Judge.

The defendant Loretta Greer was convicted by a jury in the Circuit Court of the City of St. Louis of two counts of second degree robbery. She was sentenced as a prior offender to a total of twenty years imprisonment. Defendant now appeals her conviction.

On January 11, 1987 at approximately 11:30 p.m. a cab driver was waiting for a fare at a cabstand on a shoe store parking lot. The defendant approached Hill and, after finding that he was on duty, entered the front passenger side and stated that her "husband" would be riding along. She unlocked the back door and her companion, Roosevelt Holmes, entered the back seat of the cab. Defendant gave Hill an address on Pine Street and Hill began to drive.

Defendant directed Hill to a dead end on Pine Street and stopped the car to await payment. Holmes, who was seated behind Hill, grabbed Hill around the neck and sprayed him in the face with mace. Defendant took Hill's wallet which contained approximately two hundred dollars, pulled the radio wires out of the dashboard and, along with Holmes, fled the scene.

On January 24, 1987 at approximately 2:00 a.m. Harry Winn, a cabdriver, was awaiting a fare in front of a local tavern. He was flagged down by the defendant and Holmes. Defendant gave him an address on Shreve Street and sat in the front passenger seat. Holmes entered the rear of the cab and sat behind the driver. When Winn arrived at the Shreve Street address, he stopped the cab and awaited payment. Holmes grabbed Winn from behind and sprayed him in the face with mace. The defendant attempted to remove Winn's pants but was unsuccessful. She then attempted to drive the cab but it became stuck in the snow. Holmes got into the front seat and the struggle continued. Officers Brown and Boone arrived on the scene as the three struggled in the front seat of the cab. The defendant and Holmes were arrested on the scene and were positively identified by Hill as his attackers.

In her first point on appeal the defendant argues that the trial court erred in admitting Hill's testimony concerning his extrajudicial identification of defendant by means of photo array and lineup. Defendant claims that the procedures used were impermissibly suggestive and unreliable. Fifteen days after Hill was robbed, Detective Dierkes phoned Hill to tell him the police were holding some people who had "stuck up a Harris cab" and that he had some photographs he wanted Hill to view. Dierkes brought the photos to Hill's home and showed him two sets of photographs. From a set of four female photos Hill identified the defendant as his attacker. Hill was not told whether he had picked the same people who robbed the driver of the Harris cab. The same day Hill was summoned to the police station to view a line up. Prior to viewing, Hill was placed in a room with Winn but had no conversation with him. Hill was accompanied by Detective Dierkes to view the line up. At no time did Dierkes suggest to Hill who he should pick out of the line up. Hill identified a woman other than the defendant. After the line up the police told her that he had picked the "wrong" lady.

■ The crucial test for determining the admissibility of identification testimony is two-pronged. First, the court must determine whether pretrial identification procedures were suggestive. If so, the court must then evaluate the impact of the suggestive procedure on the reliability of the identification made. *State v. Williams*, 717 S.W.2d 561, 564 (Mo.App.1986). Reliability rather than suggestiveness is the linchpin of due process in identification procedures. *State v. McNutt*, 748 S.W.2d 408, 409 (Mo.App.1988). Reliability is to be assessed under the totality of the circumstances including the opportunity of the witness to view the criminal at the time of the crime; the witness' degree of attention; the accuracy of the witness' prior description of the criminal; the witness' level of certainty at the confrontation; and the length of time between the crime and the confrontation. *State v. Pettit*, 719 S.W.2d 474, 477 (Mo.App.1986).

Defendant argues that the fact that Dierkes told Hill that the police had a suspect in custody prior to showing Hill the photo array left Hill with the expectation that one of the persons in each set of photos was guilty. This "created a 25% chance that he [Hill] would pick any of the four women depicted, regardless of whether they had been the one who robbed him". This argument is absurd. "It is implicit in a line up or photographic array that one of the persons shown is a suspect." *State v. Cook*, 753 S.W.2d 28 at 30 (Mo.App.E.D. 1988). The fact that the victim knows the police have a suspect in custody or that a suspect is present in a photo array or line up, does not make the procedure suggestive. *Id.*

Defendant further argues that the likelihood of misidentification was compounded by the fact that Hill was informed that he had selected the photos of the same people who robbed Winn. This "reinforcement" served to "taint the independence and veracity of any subsequent identifications." These facts do not appear in the record. At the suppression hearing both Hill and Dierkes stated that after Hill identified two suspects from the photo array he was not told whether he had selected the same ones suspected of robbing Winn.

Finally, defendant argues that the fact that Hill was told he selected the "wrong" woman was suggestive and was designed to get Hill to identify the same people that had robbed Winn. We have reviewed the record in its entirety and find nothing suggestive about the statement made to Hill. The remark did not indicate to Hill that the defendant was the guilty party, nor was it the kind of remark designed to coerce Hill into identifying the defendant at trial. We conclude that the identification procedures employed were not impermissibly suggestive.

Moreover, the totality of the circumstances indicate the reliability of the identification. Defendant entered Hill's cab in a well-lighted parking lot. When she entered the cab the overhead light came on. During the thirty minute drive to Pine Street Hill was able to view the defendant from the side. When the cab stopped, Hill was able to see the defendant's entire face. There is no indication that Hill was inattentive while he was in the presence of the defendant. He was on the job and was required to be attentive and responsive to the requests of his passengers.

Hill told the police who arrived at the scene of the robbery that his attackers were a black male and a black female. No discrepancy as to this description has been asserted.

At the suppression hearing Hill was unequivocal in stating that he selected defendant's photo from the array because "[t]hat's the lady taken [sic] the money from me". Hill positively and unequivocally identified the defendant at trial. Hill's difficulty in identifying the defendant in the line-up was brought before the jury so they could evaluate his identification. *State v. Gregory*, 630 S.W.2d 607, 609 (Mo. App.1982).

Finally, the length of time between the crime and the confrontation was fourteen days. It has been held that a seventeen month period between the crime and confrontation, when coupled with other indicia of reliability, was not sufficient reason to exclude identification testimony. *State v. Story*, 646 S.W.2d 68, 71 (Mo. banc 1983). This point is ruled against the defendant.

In defendant's second point she argues that the trial court erred in overruling her objection to comments made by the prosecutor in his closing argument. The defendant finds the following portion of closing argument objectionable:

MR. TANNER: Now you're supposed to give separate consideration to each count. Mr. Winn's case is separate from Mr. Hill's case. That doesn't mean you don't use your common sense when you look at all of the evidence. This as they say M.O., motive [sic] operation, is distinctive. I mean I think you'd all agree with me. How many robbery teams are there out in the city of St. Louis?

MS. RANDALL: I'm going to object. That's not in the evidence and that's pure speculation.

MR. McKAY: Join in the objection.

THE COURT: Overruled.

MR. TANNER: How many robbery teams, how many—a man and a woman are running around St. Louis robbing cab drivers where the man sits in the back, the woman sits in the front, and the man sprays mace in the cab driver's eyes? How many teams like that, like Holmes and Greer, are there running around out there? Is this just only coincidence or does the motive [sic] operation, the distinctive nature, the special nature, the unique characteristic of these crimes, does that tell you something?

The defendant argues that the above statements gave the jury the impression that the prosecutor knew that the *modus operandi* of the defendant was unique and as such was based on matters not proven at trial, improper and prejudicial. The trial court is vested with broad discretion in controlling closing argument and counsel is given wide latitude in his summary. *State v. Antwine*, 743 S.W.2d 51, 69 (Mo. banc 1987). The ruling of the trial court shall be reversed only for an abuse of discretion where the argument is plainly unwarranted. *Id.* During closing argument a prosecutor may state an opinion or conclusion which is fairly drawn from the evidence. *State v. Nickens*, 701 S.W.2d 478, 483 (Mo. App.1985). The argument made by the prosecutor in this case was a comment on an inference that was fairly drawn from the evidence. We find no abuse of discretion. Point denied.

The judgment of the trial court is affirmed.

CARL R. GAERTNER, J., and SIMEONE, Senior J., concur.