**STATE of Missouri, Respondent,**

v.

**Hal TAYLOR, Appellant.**

**No. WD 39790.**

Missouri Court of Appeals,
Western District.

Sept. 19, 1989.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Oct. 31, 1989.

Application to Transfer Denied
Dec. 12, 1989.

Tim Wynes, Columbia, for appellant.

William L. Webster, Atty. Gen., William J. Swift, Asst. Atty. Gen., Jefferson City, for respondent.

Before GAITAN, P.J., and
MANFORD and ULRICH, JJ.

GAITAN, Presiding Judge.

Defendant, Hal Taylor, was convicted by a jury of assault in the first degree and armed criminal action, §§ 565.050 and 571.-015, RSMo 1986, and was sentenced as a persistent offender to consecutive sentences of life imprisonment and twenty years. The defendant filed an appeal of conviction to this Court in August of 1987. Upon notice of the defendant's filing of a Rule 29.15 Motion, the Court withdrew the appeal from submission pending resolution of the motion. Defendant now reinstates his original appeal, as well as appeals the trial court's denial of the Rule 29.15 Motion without Evidentiary Hearing. The two appeals have herein been consolidated, pursuant to Rule 29.15(1). Judgments are affirmed.

The defendant raises eight points of error: (1) insufficiency of the evidence to support conviction; (2) insufficiency of the

evidence to support enhanced sentencing of the defendant as a persistent offender; (3) purposeful racial discrimination in the State's exercise of its peremptory challenges to remove black venirepersons from the jury panel; (4) failure to suppress physical evidence seized pursuant to a warrantless, nonconsensual search of the defendant's apartment; (5) denial of the Rule 29.15 Motion without Evidentiary Hearing; (6) failure to provide the defendant notice or hearing prior to denying the Rule 29.15 Motion; (7) failure to make findings of facts and conclusions on all allegations presented in the defendant's Rule 29.15 motion; and (8) denial of defendant's Rule 75.01 Motion (Judgments affirmed).

Gerald Carlstrom, a cab driver, testified that on November 23, 1986, at approximately 3:00 a.m., he received a radio call from his dispatcher to pick up a passenger at (1301) East Armour Boulevard. When Mr. Carlstrom stopped at that address, he saw two black males talking in the doorway. After Mr. Carlstrom had waited a few minutes, one of the men came outside and walked to the cab. As the man opened the rear right door, the interior domelight came on. Mr. Carlstrom saw the man's face, saw that he was wearing a baseball cap and that he had a white rag tied around his head.

As the man stepped into the cab, he bumped the bill of his cap against the door. While reaching with his right hand to adjust the cap, the man simultaneously held his left hand up, blocking Mr. Carlstrom's view of his face. Mr. Carlstrom had, however, already seen the passenger's face.

After the man got into the cab and gave an initial address, he stated, "First I want to stop for a nickel bag. Take me around here on 36th and Virginia." The requested location was only a few blocks away. Mr. Carlstrom drove towards 36th and Virginia and as he neared the location, the man told him to stop. While Mr. Carlstrom brought the cab to a stop, the man sprang forward, placed his left arm around the cab driver's neck and began to pull him backwards over the seat. At the same time, Mr. Carlstrom

felt punches to his chest; he did not realize at the time that he was being stabbed.

After the fourth or fifth stab, the man demanded money. Not waiting for a response he continued to stab Mr. Carlstrom, who was attempting to find and use his can of mace. Finding it in his pocket, Mr. Carlstrom sprayed the mace at his attacker. The man let go of the cab driver and exited the cab through the right rear door. As the domelight came on, Mr. Carlstrom saw blood and realized he had been stabbed. Angry, he opened his door, got out and shouted at his attacker. The man stood six to ten feet away and Mr. Carlstrom again could see his face.

Mr. Carlstrom drove to the Linwood Police Station for assistance. While at the police station, he gave a brief statement to Officer Troy Meyer. In the statement, Mr. Carlstrom described his assailant as a skinny black male, 20 years of age, who wore a headband and a black baseball cap. He was then transported by ambulance to Truman Medical Center, where emergency surgery was performed. On November 24, 1986, Detective George Burns visited Mr. Carlstrom at the hospital, and showed him a six picture photo array. Mr. Carlstrom identified the defendant as the assailant. Two days later, on November 26, 1986, Detective Burns returned with a videotape of a lineup. Mr. Carlstrom again identified the defendant as his assailant.

Following Mr. Carlstrom's identification of defendant's photograph, Detective Burns and two other police officers, Captain Massock and Sergeant Florea, went to the defendant's apartment to question him regarding the assault. Upon their arrival, Detective Burns advised Mr. Taylor that the officers were investigating a robbery and stabbing. The defendant invited the police officers into the apartment. While inside the officers asked Mr. Taylor's permission to search the apartment and requested that he sign a "consent to search" form. Detective Burns testified that the defendant said, "You can go ahead and search it, but I'm not going to sign anything, man. I'm not going to sign it." The

defendant was not under arrest at the time he gave his verbal consent to the search.

Detective Burns further testified that the defendant assisted in the search, moving furnishings and objects. Sergeant Florea observed a loose ceiling tile and stood on the chair in order to see up into the drop ceiling. Unable to adequately see into the false area, he requested that Detective Burns take a look. The detective found a knife laying on top of one of the ceiling tiles. Although the ceiling tiles were covered with dust, the knife was not dusty. Detective Burns testified that once the knife was found, the defendant stated that he would deny giving permission to search the apartment. Following discovery of the knife, defendant Taylor was placed under arrest and taken to the downtown headquarters for booking.

At trial, John Wilson of the Regional Crime Lab testified that he analyzed the knife and found that it contained a small amount of flesh in the serrated edges. Further testing revealed that the tissue contained blood of the same PGM blood grouping type as Mr. Carlstrom's. Approximately twenty-one percent of Kansas City's caucasian population share that particular blood type.

The surgeon who treated Mr. Carlstrom at Truman Medical Center, Doctor Thomas Reardon, testified that Mr. Carlstrom had been stabbed eight times and that the wounds were consistent with the physical characteristics of the knife recovered from the defendant's apartment.

Defendant Taylor testified in his own defense, providing an alibi for his whereabouts on the night of November 23, 1986; his testimony was corroborated by a friend, his wife, and his brother. The defendant denied having given police officers permission to search his apartment. He stated that the knife was not his, but rather belonged to an acquaintance named Thomas James or "T.J". The defendant testified that T.J came to his apartment on the morning of November 23, 1986 and asked the defendant to hold on to the knife for him, as well a leaving a .357 Python Magnum as collateral for a loan. T.J never returned to claim the items. The defendant admitted that he did not know where T.J lived or how to contact him.

## I.

In his first point, defendant contends that there was insufficient evidence to support his conviction. He argues that the victim's identification of him as the assailant was unreliable, and that the circumstantial evidence linking him to the crime was not so conclusive as to preclude a reasonable hypothesis of his innocence.

In testing the sufficiency of the evidence to support a conviction, the appellate court must accept the state's evidence as true and give the state the benefit of all reasonable inferences, while disregarding all evidence and inferences to the contrary. *State v. LaRette*, 648 S.W.2d 96, 98 (Mo. banc 1983), *cert. denied*, 464 U.S. 908, 104 S.Ct. 262, 78 L.Ed.2d 246 (1983).

In attacking the victim's identification of defendant, defendant argues merely that Mr. Carlstrom could not reliably have identified his assailant because of the darkness of the street at 3:00 a.m. and because the attacker put his hand in front of his face when he stepped into the lighted interior of the cab.

The testimony of a single witness is sufficient to establish the identity of a criminal defendant if the jury believes it beyond a reasonable doubt. *State v. Bolder*, 635 S.W.2d 673, 679 (Mo. banc 1982), *cert. denied*, 459 U.S. 1137, 103 S.Ct. 770, 74 L.Ed.2d 983 (1983). Mr. Carlstrom testified that he had already seen defendant's face before the defendant entered the cab and that he saw defendant's face again after the assault when both he an defendant exited the vehicle. Defendant has not demonstrated that the circumstances made identification physically impossible, and the eyewitness testimony must therefore be accepted as true. There was nothing intrinsically unbelievable about Mr. Carlstrom's testimony. Defendant points to certain inconsistencies in the testimony. These inconsistencies, however, do not warrant detailed consideration because inconsistencies

in the evidence are matters for the jury's consideration and will not support a charge of insufficiency of the evidence. *State v. Landes*, 661 S.W.2d 596, 598 (Mo.App. 1983).

■ Defendant argues also that the knife found in defendant's apartment and the blood type evidence derived from it are merely circumstantial evidence and therefore insufficient to support a conviction unless the evidence precludes every reasonable possibility of his innocence, *citing State v. Biddle*, 599 S.W.2d 182, 192 (Mo. banc 1980), and *State v. Connor*, 651 S.W.2d 550, 555 (Mo.App.1983).

The "circumstantial evidence rule" governs only those cases found *entirely* on circumstantial evidence. *State v. Nickens*, 701 S.W.2d 478, 486 (Mo.App.1985), *citing State v. Biddle*, 599 S.W.2d at 192. Here the State's case was supported by both direct and circumstantial evidence. Mr. Carlstrom's testimony describing and identifying his assailant was based upon his first-hand knowledge as the victim and was, therefore, direct evidence of defendant's guilt. *Nickens*, 701 S.W.2d at 486. Consequently, the circumstantial evidence rule is inapplicable. *Id.*

Both the assault and the armed criminal action convictions were supported by the evidence. Medical evidence established that the victim had been stabbed eight times. The victim's stab wounds were consistent with the physical characteristics of the knife found in defendant's apartment. The traces of human blood found on the knife were of the same PGM blood type as that of the victim. The victim positively identified the defendant as his assailant.

When the evidence is viewed in the light most favorable to the state, the rational trier of fact could find that defendant committed the felony of assault in the first degree, § 565.050, in that defendant knowingly caused serious physical injury to Gerald Carlstrom and that the defendant committed the assault "by, with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon," § 571.015.1, and was therefore guilty of armed criminal action.

## II.

■ Defendant next contends that the trial court erred in sentencing defendant as a persistent offender because the State failed to establish that one of defendant's two previous convictions, a felony in Kansas, would have been a felony under Missouri law.

The question presented is whether the State must show that a felony conviction in a sister state was based upon facts which would support a felony conviction under Missouri law in order to prove defendant's status as a persistent offender under § 558.016.3. In *State v. Rellihan*, 662 S.W.2d 535 (Mo.App.1983), this Court held that the definition of the term "felony," as it is used in § 558.016.2 (defining "prior offender"), does not require a finding that a previous conviction under the law of another jurisdiction would also be a felony under Missouri law. *Id.* at 546. Enhanced sentencing under the persistent offender statute, § 558.016.3, was upheld in *State v. Barnard*, 678 S.W.2d 448 (Mo.App.1984), upon the authority of *Rellihan*. In *Barnard*, the defendant argued that he was improperly sentenced because one of his prior convictions, an Oklahoma felony conviction for "unauthorized use of a motor vehicle" would in Missouri have amounted only to "tampering in the second degree," a class A misdemeanor in Missouri. The court rejected the defendant's argument, holding that "Section 558.016.3 ... does not, in its use of the word 'felonies', require that a felony committed in another state involve conduct which, if committed in Missouri, would constitute a felony. It is sufficient that the conduct was a felony in that other state." *State v. Barnard*, 678 S.W.2d at 454.

Defendant in the present case admitted to two previous felony convictions. He pleaded guilty to the felony of assault in the second degree, on March 3, 1983, in Jackson County, Missouri. In 1982 he had pleaded guilty to one count of attempted theft of property valued at $100 or more in Wyandotte County, Kansas. That crime is

a class E felony under Kansas law.[1] The State was not required to prove that the conduct underlying defendant's Kansas felony conviction would have been punishable as a felony under Missouri law. Since defendant has previously pleaded guilty to two felonies committed at different times, he was properly sentenced as a persistent offender under §§ 558.016.3 and 557.036.-4(2).

## III.

Defendant contends in his third point that the trial court erred in overruling defendant's Motion to Quash the Jury Panel after the State used three of its six peremptory challenges to strike three of the four black venirepersons from the panel. The defendant argues that he made a prima facie case of purposeful discrimination under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and that the State failed to rebut the presumption of discrimination thus raised. Defendant Taylor further argues that the trial court erred in failing to assess the explanations provided by the State for its peremptory strikes against black venirepersons.

*Batson* held that "a defendant may establish a prima facie case of purposeful discrimination in selection of the petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial." *Id.* at 98, 106 S.Ct. at 1724. The Missouri Supreme Court outlined the elements of the prima facie showing required by *Batson*, as well as the results of such a showing, in *State v. Antwine*, 743 S.W.2d 51 (Mo. banc 1987). A defendant has the burden to prove:

> that (1) defendant is a member of a cognizable racial group, (2) that the prosecutor has exercised peremptory challenges to remove members of the defendant's race from the venire, and (3) that "these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race."

Defendant's establishment of a prima facie case creates a rebuttable presumption that the prosecutor exercised his peremptory challenges in a discriminatory manner. The burden of production then shifts to the State to rebut the presumption of discrimination by coming forward with a neutral explanation for challenging black jurors. The proffered neutral explanation "must give a 'clear and reasonably specific' explanation of the State's 'legitimate reason' for exercising the Challenges."

*Id.* at 64. (citations omitted) If a neutral explanation is given, the defendant then must demonstrate that the State's explanations are merely pretextual. *State v. Antwine*, 743 S.W.2d at 64. The court further expanded upon *Batson* by directing trial courts to consider the prosecutor's explanation for his peremptory strikes, when determining if the third element of the prima facie case had been met. *State v. Griffin*, 756 S.W.2d 475, 481 (Mo. banc 1988), *citing, State v. Antwine*, 743 S.W.2d at 64.

In the case at bar, four of the twenty-eight jurors had been excused for cause, leaving a qualified panel of twenty-four. Of the twenty-four jurors, four were black. The State exercised three of its six peremptory challenges against blacks. Defense counsel objected to the selection of the jury, arguing racial discrimination based on the State's use of peremptory strikes against three of the four blacks.

The trial court did not immediately rule on the objection. Due to the lateness of the day, the trial judge empaneled the jury, instructed them as to their duties, and released them for the day. Following the dismissal of the jury for the day, the trial court held proceedings as to defense counsel's Motion to Quash the Panel, and at the State's suggestion, a record was made. The State testified that it struck one black juror because she had worked for Legal Aid and knew defense counsel. The State struck the two other black jurors because they indicated they had, either presently or in the past, relatives in the penitentiary. It was noted that two of the six State peremp-

---

**1.** Kan.Stat.Ann. § 21–3701 (1981); Kan.Stat. Ann. § 21–3301 (Supp.1982).

tory challenges were used against white jurors who had, either presently or in the past, relatives in the penitentiary. The State alleged that the decision to strike such jurors derived from past experience. The trial court overruled the defendant's Motion to Quash the Panel.

 A finding of discrimination, or a finding of no discrimination, is a finding of fact. *State v. Antwine*, 743 S.W.2d at 66. "In a *Batson* context, the Supreme Court observed that because the trial judge's findings 'largely will turn on evaluation of credibility, a reviewing court ordinarily should give those findings great deference.' " *Id.*, citing, *Batson v. Kentucky*, 476 U.S. at 98, n. 21, 106 S.Ct. at 1724, n. 21. The findings of fact by the trial court shall not be set aside unless clearly erroneous. *State v. Antwine*, 743 S.W.2d at 66. A finding is clearly erroneous, even if there is evidence to support it, if the appellate court, after reviewing the entire evidence, is left with a definite and firm conviction that an error has been committed. *State v. Brinkley*, 753 S.W.2d 927, 930 (Mo. banc 1988), *citing, State v. Antwine*, 743 S.W.2d at 66.

 In the present case, the defendant satisfied the first two elements of the *Batson* test. He is black, and the State used peremptory challenges to strike blacks from the panel. However, the defendant fails to meet his burden to show that these facts, as well as any other relevant circumstances, raised an inference of racial discrimination.

The State provided a reasonable, legitimate reason for striking the three black jurors. One purpose, to avoid jurors who had relatives with penitentiary experiences, was exercised against white jurors, as well as blacks. "Batson does not prohibit 'hunch' challenges so long as racial animus is not the motive." *State v. Antwine*, 743 S.W.2d at 67.

Our review of the record indicates that the State made a legitimate, neutral explanation of its use of peremptory challenges. Although *Antwine* was not yet decided at the time of trial in the present case, the trial court permitted the State to make a record of its explanation. The trial court, after hearing the State's reasons and with an opportunity to assess circumstances, found that the defense failed to make a prima facie case of racial discrimination. No further hearing was required. Therefore the trial court properly denied the defense's Motion to Quash the Jury Panel.

The defendant contends that he was not allowed to present evidence to refute the State's explanation at trial. The record indicates that defense counsel made no request to address the court, nor did he attempt to refute the State's explanation. The trial court did not refuse defendant's request as no request was made. Thus the defendant's allegation is without merit. The point is denied.

### IV.

Defendant's fourth point of error alleges that the police searched defendant's apartment without defendant's consent and that the trial court consequently erred in denying defendant's pretrial motion to suppress physical evidence.

 In reviewing the trial court's ruling on the motion to suppress, the appellate court is free to disregard contrary evidence and inferences and to affirm the trial court's ruling if the evidence is sufficient to support it. *State v. Blair*, 691 S.W.2d 259, 260 (Mo. banc 1985), *cert. denied*, 480 U.S. 698, 107 S.Ct. 1596, 94 L.Ed.2d 678 (1987). A warrantless search is permissible under the Fourth Amendment if conducted pursuant to a voluntary consent which was not the product of duress, coercion or fraud. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973). The State has the burden of showing, by a preponderance of the evidence, that the consent was voluntarily given. *State v. DuBose*, 617 S.W.2d 509, 514 (Mo.App.1981). Whether there was a voluntary consent is to be determined by the totality of the circumstances. *State v. Johns*, 679 S.W.2d 253, 261 (Mo. banc 1984).

 Viewed in the light most favorable to the trial court's ruling, the totality of the

circumstances as shown by the evidence was such that the trial court could reasonably have concluded that defendant voluntarily gave his consent to a search of his apartment. Acting upon the victim's identification of defendant as the assailant, Detective Burns, accompanied by two police officers, went to defendant's apartment, knocked on the door, identified himself, and requested permission to search for a knife. According to both Detective Burns and Captain Massock, the defendant gave verbal consent to search the apartment although he refused to sign a consent form. Defendant was not under arrest at the time he gave his consent. Defendant was not restrained. He moved freely throughout the apartment and assisted the officers at various points in the search. During the search, Detective Burns removed a loose ceiling tile and found a Bowie-type knife in the ceiling. Following the discovery of the knife, defendant became uncooperative and told the officers he would deny giving permission to search the apartment.

By his own testimony defendant disputed much of this evidence. The trial court, however, was free to disbelieve defendant's testimony. *See State v. Johns*, 679 S.W.2d at 262. The evidence was sufficient to sustain the trial court's denial of defendant's motion to suppress physical evidence.

### V.

In the defendant's fifth and sixth points of appeal, he contends that the motion court erred in denying his Rule 29.15 Motion without hearing because the motion contained a sufficient factual basis as to require an evidentiary hearing on whether the State knowingly used perjured testimony in order to gain his conviction. Further, the defendant alleges that the motion court erred in that it failed to give defendant notice or an opportunity to be heard prior to overruling the Rule 29.15 motion.

This Court's review is limited to a determination of whether the findings and conclusions of the motion court are clearly erroneous. *Futrell v. State*, 667 S.W.2d 404, 405 (Mo. banc 1984); *Jones v. State*, 760 S.W.2d 176, 177 (Mo.App.1988). Rule 29.15(g) states that a hearing shall not be held if the files and records of the case conclusively show that the movant is entitled to no relief. "To be entitled to an evidentiary hearing on the issue of ineffectiveness of counsel, a prisoner seeking relief must plead facts, not conclusions, which if true would warrant relief; and the matters complained of must have resulted in prejudice to the prisoner." *Boggs v. State*, 742 S.W.2d 591, 594 (Mo.App.1987).

A motion regarding ineffective assistance of counsel, which contends that the prosecution knowingly used perjured testimony, must plead a factual basis by which the charge can be proved, including the source and nature of the facts, rather than mere conclusions. *State v. Moore*, 435 S.W.2d 8, 16 (Mo. banc 1968); *Lohman v. State*, 759 S.W.2d 624 (Mo.App.1988). In order for the defendant to prevail on such a claim, he must establish: (1) that the witness' testimony was false; (2) that the State used the testimony knowing it was false; and (3) the conviction was obtained as a result of the perjured testimony. *Smith v. State*, 714 S.W.2d 778, 781 (Mo. App.1986). The defendant fails to make the required showing.

In defendant's Rule 29.15 *pro se* motion, he alleged that his brother overheard the prosecutor and a police officer "getting the victim to change his testimony." In his amended motion, defendant claimed that trial counsel failed to call defendant's brother to testify about "the conversation he overheard in the mens room wherein the prosecuting attorney and police officers were discussing the fact that the victim had made inconsistent statements which would have impeached the credibility of the victim." Finally, in his brief, defendant described the victim's testimony as perjured, and that the brother overheard the prosecuting attorney and police offers persuading the victim to testify falsely against the defendant. The defendant fails to state facts sufficient to prove the charge. While a source is provided, the defendant's brother, the defendant fails to specifically state in what manner the vic-

tim's testimony was false, and whether all or a portion was falsified. Rather his allegations are merely conclusory. Defendant Taylor claims "the prosecuting attorney and police officers" were involved in this duplicity. The record indicates that two assistant prosecuting attorneys made their appearance and participated throughout the trial. Four police officers testified at trial, and many more were involved with the investigation. The defendant fails to provide sufficient information as to the identity of the participants. By failing to provide sufficient facts and merely stating conclusions, the defendant fails to make the necessary showing for relief.

The defendant contends that he is entitled to an evidentiary hearing under this Court's decision in *Trimble v. State*, 693 S.W.2d 267 (Mo.App.1985). *Trimble* is distinguishable in that evidence was presented of an event, which on its face, showed witness misconduct. In *Trimble*, relatives of the defendant, as well as an independent third party, observed a victim's mother give money to the State's witnesses, and heard the mother make statements which linked the witnesses' testimony to the payment. In the present case, the defendant fails to provide sufficient facts to prove that an event, the conspiracy to perjure testimony, actually took place.

 The motion court correctly held that generally the presentation of witnesses at trial are matters of trial strategy within the discretion of trial counsel. *Camillo v. State*, 757 S.W.2d 234, 238 (Mo. App.1988). To prevail on a claim of ineffective assistance of counsel, a Rule 29.15 movant must show that his attorney's performance fell below the standard of care and skill of a reasonably competent attorney rendering similar services under the existing circumstances, and that the movant was prejudiced by such deficient performance. *Strickland v. Washington*, 466 U.S. 668, 686–87, 104 S.Ct. 2052, 2063–64, 80 L.Ed.2d 674; *Seales v. State*, 580 S.W.2d 733, 735 (Mo. banc 1979). This Court finds that trial counsel did not act unreasonably by failing to call the defendant's brother. Unlike *Trimble*, where an independent third party witnessed misconduct, the evidence of alleged misconduct relied upon a witness related to defendant. While the actions that defendant's brother described may have shown bias on the part of the State's witness, trial counsel may have found any benefit outweighed by the potential damage to defendant's and defense counsel's credibility in the eyes of the jury. Thus there was a tactical reason not to present such evidence. The movant court was not clearly erroneous in its findings and conclusions.

The defendant alleges that he was denied due process because the State knowingly used perjured testimony. As noted previously, insufficient facts have been alleged as to the falsification of testimony. The allegation is without merit.

 Defendant argues that the motion court failed to provide his counsel notice or an opportunity to be heard on its intention to dismiss the Rule 29.15 Motion without hearing. Rule 29.15(g) provides that:

> Within fifteen days after the date an amended motion is required to be filed, the court shall determine whether to grant a hearing. If no request for hearing is timely filed or if the court shall determine the motion and the files and records of the case conclusively show that the movant is entitled to no relief, a hearing shall not be held.

Rule 29.15(g) gives constructive notice to a movant that the motion court is going to rule on his motion for an evidentiary hearing within fifteen days after the verified amended motion is required to be filed. *State v. Weatherspoon*, 775 S.W.2d 160, 161 (Mo.App.E.D.) (1989); *E.g., Chatman v. State*, 766 S.W.2d 724, 726 (Mo.App.1989) (construction of identical provision in Rule 24.035(g)). The defendant was not denied due process.

 The defendant notes that the motion court failed to timely rule on the Motion for Evidentiary Hearing and to issue its Findings and Conclusions pursuant to Rule 29.15(g) and (i). As this Court found in *King v. State*, 772 S.W.2d 6, 7 (Mo.App. 1989), no enforcement mechanism to assure compliance by the trial court with the deci-

sion schedule appears in the rules. The only remedy for a motion court failing to rule within thirty days is a writ to compel compliance. As the motion court made its findings and conclusions, albeit late, no relief is available. Defendant's fifth and sixth points are denied.

## VI.

The defendant's seventh point on appeal is that the motion court failed to make findings of facts and conclusions on all matters alleged in the Rule 29.15 Motion. "Findings must be responsive to the matters raised in the motion for post-conviction relief, but need not be itemized." *Munoz v. State*, 743 S.W.2d 506 (Mo.App. 1987). The findings need only be sufficient enough for an appellate court to determine if they are clearly erroneous. *Jackson v. State*, 729 S.W.2d 253, 255–56 (Mo.App. 1987). Generalized findings may be enough for meaningful review. *Schneider v. State*, 761 S.W.2d 292, 294 (Mo.App. 1988).

We find defendant's contention without merit. The motion court dealt with all allegations raised in the Rule 29.15 motion. Due to the magnitude of the motion, including but not limited to nineteen allegations of ineffective assistance of counsel, the motion court separated allegations into related groups and made findings and conclusion on those generalized groups.

Defendant erroneously relies on this Court's decision in *Holloway v. State*, 764 S.W.2d 163 (Mo.App.1989). In *Holloway*, the motion court's only findings and conclusions were two brief sentences. In this case, the motion court made specific findings and conclusions on all issues alleged in the motion, and such findings and conclusions were sufficient for our review. Point denied.

## VII.

Following the motion court's overruling of defendant's Rule 29.15 Motion, the defendant filed a *pro se* Rule 75 Motion, asking the motion court to vacate it's Rule 29.15 judgment on the grounds that his motion counsel failed to file a Rule 51.05 Motion, (Change of Judge), pursuant to defendant's request.

The State urges this Court to dispose of this issue through its decision in *Lewis v. State*, 767 S.W.2d 49, 52 (Mo.App.1989). *Lewis* held that a movant who is represented by counsel is not entitled to consideration of his *pro se* motion while represented by counsel. While defendant Taylor did file a *pro se* motion while represented by counsel, we find *Lewis* distinguishable to the present case, because motion counsel filed a subsequent Motion for Ruling on the *pro se* motion, thereby adopting the initial *pro se* motion as her own.

The general rule is that inadequacy of counsel on motion for post-conviction relief cannot be challenged on appeal from denial of such a motion. *Sherrill v. State*, 755 S.W.2d 718, 723 (Mo.App.1988); *Jones v. State*, 736 S.W.2d 439 (Mo.App.1987). Defendant's final point is in essence an ineffective assistance of counsel argument, and fails to provide reasons to depart from stare decisis. Defendant's final point is denied.

The judgments of the trial court and motion court are affirmed.

All concur.